The last case today is 412-0724, 0725, 0726, Consolidated. This is the people of the State of Illinois, Mr. David Curry, Shadow of Appearance, Appellant Richard Fraser, I'm the F of Appellant I should say, and there's Anastasia Brooks, I'm the F of Appellate. Mr. Fraser, you may proceed. May it please the Court, Mr. Brooks. My name is Rick Fraser with the law firm of Metnick, Cherry, Fraser & Saban here in Springfield. We're here to represent Mr. David Curry on his appeal from his conviction from Schuyler County. The most egregious conviction was for the offense of aggravated driving under the influence. He was subsequently sentenced to four years in prison, three of which was mandatory by trial judge Alicia McMillan. We are here raising five issues for review. The most critical of one is what leads off with my brief, and that is the denial of Mr. Curry's Sixth Amendment right to his choice of counsel. This Court faced a similar issue in 1996 in the case of P. B. Bingham, a different panel obviously than what we have today, but it was a very similar case. In that case, as the Court knows, New Counsel attempted to get the case at the last minute. He was not present in court to request a continuance himself. The defendant had an existing attorney, and the Court said that she would not grant a continuance for New Counsel to be prepared and represent the defendant because the trial witnesses were ready, the jury was ready, and the Court proceeded. That New Counsel was you? No. In this case, yes, Your Honor. In that case, no. Oh, yeah. In this case. Now, see, the thing is, Mr. Frazier, you know, your history precedes yourself. We know you're an experienced, very well-trained not only trial litigator, but an appellate court litigator, not that many, as you know, who is quite familiar with the standards discussed here, quite familiar with all the law that you've argued to us with regard to the whole business of what applies on this question. And like the discussion in Childress, the facts reveal New Counsel standing ready, willing, and able to make an unconditional entry of appearance on the defendant's behalf, and it seems to me that your involvement on behalf of this defendant was rather short of that. Now, it's kind of interesting that you're here arguing this to us, because typically the posture would be someone from OSAD saying, well, maybe Counsel didn't know. Not a position you can maintain, Mr. Frazier. So what's the story? Why didn't you stand ready, willing, and able to make an unconditional entry of appearance on the defendant's behalf as the law requires? Thank you, Judge. As the record indicates, approximately two weeks prior to the commencement of trial, Mr. Curry first contacted my office and expressed concerns concerning his present representation. I informed him I had two medical procedures that had to be done within the next two weeks, as well as my trial schedule, and that if he wanted to retain me, that he needed to retain me immediately. Otherwise, I would not be able to represent him because I could not be adequately prepared. See, that's exactly the sort of sound advice I'd expect to hear from an experienced trial counsel like you. Mr. Curry was very persistent. He came in my office approximately a few days before the trial started, left retainer money, and indicated that he wanted me to be ready and represent him. I told him, as stated in the record, there was no way I could be prepared and adequately represent him at trial. If he wanted a continuance, he needed to ask the court for that. And if the court granted that continuance, then I could certainly represent him. I am well familiar with Judge McMillan's standards in Schuyler County. I've tried several cases there a year. As she stated on the record, my belief of what I thought if I did represent him or file a motion to substitute counsel a few days before trial, she would have expected me to be there on Monday and proceed with trial. And she verified that in the record. And there was no way I could adequately represent Mr. Curry. I told him that. I told him if he wanted a continuance, he needed to state his reasons why. And if he was granted a continuance, then I could be adequately prepared to represent him. So despite all your years of experience, you were confident that had you entered your appearance on that day that you would not be ready, willing, and able to immediately or within the next few days adequately represent the defendant. Correct. Why isn't that the beginning and end of the matter before this court? Well, because Mr. Curry was persistent with the court. He says, hey, I don't like that. It's like saying, I don't like the rules governing this process. I mean, why do we really care? In other words, isn't the law such that unless you were ready, willing, and able to make an unconditional entry of appearance on the defendant's behalf, then the trial court did not and could not have erred by denying his request for continuance on the grounds of putting in new counsel. Isn't that the rule? Yes. It's partly the rule. There's another part. The full rule is there has to be some flexibility of the trial court on a given factual scenario which makes exceptions to those rules. And in fact, in being of your honor, new counsel was not present, able, and willing to go that day. And the court denied his request for continuance, and the court reversed. Because this court has said the Sixth Amendment right of a defendant, as for counsel of his choosing, is an integral part of this system. Well, counsel, let's go back to Bingham. Doesn't Bingham really rest on the issue that it was determined the trial court did not even make an inquiry? Yes. That was the problem. And we had an inquiry here, didn't we? No, we did not. Didn't the court ask counsel for the defendant for additional information regarding the motion? Mr. Harmon, who argued the motion for a continuance, which I may say half-heartedly, made the motion, stated that Mr. Curry wished to hire new counsel, that he did not wish for them to represent them, and also indicated to the court, to Judge McMillan, Mr. Curry wants to say why he wants new representation. And the court said, no, you have counsel to represent you. I'm not going to allow any pro se statements. Well, the inquiry isn't from the defendant on having new counsel. The inquiry we talked about in Bingham is, judge, what do you know about when and where and who this new counsel is? In this case, Judge McMillan knew all about when, where, and who it would be, and what you would require. And Mr. Harmon also indicated to the court your unavailability, the situation that you had regarding not being ready, willing, and able to do the trial at that time. He also indicated that to the court, is that correct? Correct. And that you were defendant's counsel of choice, that that's the person the defendant wanted. Yes. And also, the Bingham inquiry is not, who is this new attorney? The Bingham inquiry is to the defendant. What are your reasons? Are these for delay of court? Are you manipulating the court system? All of these questions in order for the court to make an informed decision of what is the defendant's motive. No, actually, it's interesting you made that point, because if an experienced counsel like you could be arguing what the Bingham inquiry stands for, then we obviously have to make it clear that that's not what it means. The Bingham inquiry is supposed to be of the trial judge to inquire about counsel. The fact that the defendant appears and says, I want a new lawyer, is pretty much all we need for Sixth Amendment purposes. He's making his selection. But what we need to know, and what the trial judge in Bingham never inquired about is, who is this guy, and when is he going to show up, and will he be ready? Indeed, for all we knew in Bingham, the lawyer who wasn't there at that moment might very well have been there on further inquiry that day or the next day and be ready to go. In fact, Your Honor, in Bingham, again, counsel was not present that day, so there was no inquiry or no knowledge of the court of whether he was able to proceed or not. However, there was evidence, which the court relied upon, that he did contact the state's attorney upon his contact by the defendant, which I did also. I, in fact, contacted, as the record bears out, Mr. Sharp at that point, informing him of the uneasiness of his client and the possibility of taking over. I reached out to the state's attorney to see what she thought the judge's position would be in continuing the matter to allow new counsel to get involved because of my trial schedule and medical procedures that were necessary. So it wasn't some random mythical attorney that nobody had heard of for which the defendant was using in order to try to gain an advantage with the court. And there was no prior continuances in this case either. This was the first time this was set for trial, which was another factor which Bingham relied upon in reversing the defendant's conviction. So those are the similarities with this case. And also in Bingham, there was a three-month delay from when his arrest was off, and in this case it was a little over four months. So it's a pretty similar time frame also. This case was not a year or two old, which is sometimes the issue when trials are had. This was a relatively new case also. So there are an extreme amount of similarities with the factual scenario in this case. And all these cases are factually intensive with the Bingham decision. The second issue, and I'm going to talk a little bit about this here in the Supreme Court Rule 431B issue also and not address the last three issues and stand on my brief in the final three issues, but there was an issue of zeer and whether Supreme Court Rule 431B was complied with too. I've cited two cases in that case. The recent case of Wilmington, which the Illinois Supreme Court reiterated its belief that trial courts must do two things when they conduct voir dire. Ask if the jurors understand the four principles of zeer. And the second issue that the court must inquire the jurors is if they accept. So understand and accept. In this case, I don't believe the voir dire was as egregious, quite frankly, as in some other cases that I relied upon. Judge McMillan did ask, after telling them what the four principles were, the court asked them whether they agreed or disagreed to each individual. And each individual juror said agree. Well, in Wilmington, interestingly, the Supreme Court said, well, arguably that could be grounds to argue, to believe that they agreed or accepted, okay, the four principles of zeer, but it has nothing to do with the second branch. It's whether they understand those four important principles. And that was not done here. Judge McMillan went through a litany of I want you to understand or you have to, but she never asked them specifically whether they did understand that. She asked if they agreed, which means accept. I concede that. But she didn't ask them if they accepted. In Wilmington, there was no individual back and forth with the jurors in the trial court whatsoever. He just said, you know, do you all agree? Anybody disagree with this? Nobody raised their hand. In Blair, I don't believe there was any individual inquiry either. But this is the exact type of voir dire, which is the reason why Supreme Court Rule 431 was changed, as set out in Thompson's decision by the Illinois Supreme Court. The Supreme Court does not want a general statement of the law and then a general question as to whether it's okay with everybody. And that's basically what happened here also. Since, in Thompson, the Supreme Court clarified that it's the plain error standard that applies. Correct. I don't recall that the Supreme Court has reversed anything. Indeed, I don't think I can recall any appellate court decisions. It's not to the trial judge's credit not to comply with Rule 431. But here, as in these other cases, the question is, given that the defendant didn't object or in a plain error context, why should we find plain error applies? Correct, Your Honor. And Bloomington set forth that too. They indicated there was error, there was no objection. Therefore, they went to the plain error analysis, and they basically focused on whether the evidence was closely balanced to determine whether there was a plain error. And that kind of dovetails into my other argument, which is the ineffective assistance of counsel argument. The things that were not done that should have been done to protect Mr. Curry's interest, as well as going through the facts of this case to show that it was closely balanced. And had the jurors been instructed correctly, it may have made a difference. Those factual issues, briefly, Your Honor, are Mr. Curry was stopped, it was late at night, the weather conditions were bad, there was no field sobriety test, there was no breath test, there was no evidence in the record where his balance was unsteady when he got out of the vehicle. There was a standard testimony by the officer, which is typical in my experience of DUI cases, slurred speech, bloodshot eyes, and that sort of thing, as well as some bad driving. The bad driving issues were not contained in his police report. Those were first testified to at trial. So that's the scenario of this case, is there's no videotape, there's no breath test, and there's no field sobriety test. That in and of itself, I believe, makes it closely balanced, and certainly a triable case. The other issue, which needs to be addressed briefly, is this videotape issue, which was never introduced into evidence, and which also the prosecutor commented on in her closing argument. Mr. Shaw, Mr. Curry's attorney, chose not to introduce this video, which he had possession of, which purportedly showed Mr. Curry falling asleep while being read the warning to motors. This police officer testified about it. The videotape was never introduced by the prosecutor, nor by the defendant. Mr. Shaw, Mr. Curry's lawyer, made issue of that, saying it's not my burden, it's her burden to prove this could have corroborated the police officer's testimony. That's not what was introduced. What the prosecutor then argued in her rebuttal was that, she said this personally, I guarantee you, if that videotape did not show what the officer testified to, you would have seen it, is what she indicated. And there were some other things she said in her closing argument, too, that were certainly objectionable, which were not. But that's the other issue concerning whether this case was closely balanced or not, is whether there was any corroborating testimony or evidence of this police officer's testimony, which there was not because the videotape was not introduced. For those reasons... The officer did testify that he witnessed the defendant actually driving, so there's a period of time the officer saw him driving, and that he cut across the center line, he swerved into a yard, didn't stop after the officer activated his lights. The defendant refused field sobriety testing. It just wasn't not given, he refused it. And so, doesn't that mitigate your argument that the evidence was close? Yes. Well, driving, obviously, Your Honor, is an important issue in all driving under the influence cases. The evidence of bad driving was impeached. Those facts were not put in the police officer's swarm report. And, again, Mr. Curry was residing at this hotel where he pulled in, and the evidence certainly could have been argued that he was waiting to find a good, safe place to pull over, and the weather was bad before he stopped in the police office. Of course, Mr. Curry never testified, so we don't know why he didn't stop. But certainly there are ways to explain what the officer, or to impeach what the officer supposedly saw on the evening in question. And then he also had the odor of alcohol on his breath and was observed acting to be confused. I believe there was some testimony from the officer he was confused or agitated, I think, when he was trying to find some of his documents in his vehicle. But that can be explained again, Your Honor, by the fact this was not his car, and he was frustrated for looking at it because he didn't know where these documents were. The last thing I would ask for before closing would be that we did file a request for a bond-pending appeal, which was denied. Mr. Curry's outdate, I believe, is presently August of 2014, if he receives his day-for-day credit down the road. So we would be renewing that request at this time. And for those reasons which stated, we would ask that Mr. Curry's conviction be reversed and the cause remanded for a new trial. Thank you. Thank you, counsel. Ms. Brooks? May it please the Court and counsel. My name is Anastasia Brooks. I represent the people. First of all, the fact that the defendant had identified an attorney and paid a retainer is not the standard. The standard is stated in the Koss case, K-O-S-S, with new counsels ready, willing, and able to make an unconditional entry of appearance in stanter. And that was not met, obviously, because of the facts that were drawn out upon the trial court's inquiry into the circumstances of the defendant's motion for a continuance. Also, the state has pointed out in its brief and has not been replied to by the defense with the fact that there was no affidavit that accompanied the motion to continue. And that is another ground that this court may rely on to infer, even though there was no issue raised as to that below, because the affidavit may raise that ground. And even though the trial court did not explicitly rely on that, the lack of an affidavit in denying the motion for a continuance. Here, the record is clear that there was no unconditional willingness for Mr. Frazier, the identified new counsel, to enter into the case at the time that the case was set for trial during the June term in Schuyler County. By not being able to appear and represent the defendant in the June term would have necessitated a continuance to the October jury trial term, which would have been a continuance of four months. So it was not possible for the trial court to grant only a small three-day or week type of continuance for Mr. Frazier to become available. It was actually a situation where it was either going to go in June or in October. And if Mr. Frazier was not ready in June, it would have to be in October. And the trial court had discretion not to postpone the case for four months, simply because Mr. Frazier was unable to appear and represent the defendant in the June term. Of course, Ms. Brooks, the trial court has the right to call a special jury, even if their regular jury calls are only two or three times a year. If the delay was wanted to be less, they could have called a jury to come in three weeks later. Even if the trial court had the authority to do that, it doesn't mean that the trial court was obligated to do that and essentially to change its regular practice, its procedures of courts. Right, but you're looking at a defendant's right to his choice of counsel. Yes, Your Honor. So does the trial court's, what I'm getting at, is it an automatic trump of the defendant's right to his choice of counsel because the court schedule isn't going to work? Well, the case that I found said that, if I can find it, a defendant cannot serve the right to counsel of choice in order to even temporarily thwart the administration of justice. So that's a staple case. Could you say that again? I'm sorry. That the defendant cannot even assert the right of counsel of choice in order to even temporarily thwart the administration of justice. And that's the staple case. Okay, well here you had a case where the defendant never asked for a continuance. The case had been pending for four months. And how does it thwart justice to give the guy a chance to get his choice of counsel, a new counsel, in? Well, the point is that he bonded out after the day of his arrest. So in several of the cases that are on this topic are in-custody defendants who have public defenders who are trying to get their first retained choice of counsel. In this situation, where a defendant has retained counsel and is out on bonds, has all that time during the time that the case is pending in which to arrange the counsel of his choice. So it's much less onerous in a situation like this one in which the defendant could have, he did have enough time prior to the commencement of trial that was approaching, and he took some steps to get money together and eventually paid a retainer to Mr. Frazier. But, of course, Mr. Frazier was not available at the time. And so this is a situation where it would, the trial court was within its discretion to rule that this was an untimely motion and deny it on that basis. How do you distinguish Bingham? Mr. Frazier made a pretty good argument that Bingham is virtually indistinguishable. Well, Bingham is distinguishable because the error there was the lack of inquiry, which meant that this court could have considered the other attorney on that record as likely or possibly being available to make the entry of appearance, even though in both cases, Bingham in this one, there was no attorney present, the identified counsel choice, which here would have been Mr. Frazier, standing there next to the defendant in front of the court. That's not required. Bingham does not require that for the defendant's identified counsel to actually be there. But if there is a lack of inquiry, then the absence of the record means that it very well could have been that that identified counsel of choice could have been there and to make an unconditional entry of appearance. But when you have an affirmative record resulting from the trial court's inquiry of the previous counsel, that the fact is now known that the new counsel, the defense-preferred counsel, would in fact be unavailable to proceed at that point and unwilling to make an entry of appearance except on conditions. And here the case was that there was a condition, according to Mr. Farman, the previous counsel, the condition was that Harman had to, quote, had to come over here, that's to the trial court, and basically beg the court for a continuance. So it was a situation where Mr. Frazier put conditions on his being retained. And this would be a first situation where a court had reversed after there had been an inquiry below as to the motion to continue in which the defendant did not have, his counsel of choice was not ready to make an unconditional entry of appearance. But in fact, contrary to the Coss case, where the entry of appearance was conditioned on a continuance, and this court in Coss, although it was an older case, said that that was not a denial of the right of counsel of choice because the entry of appearance was conditioned on a continuance. So this case is directly in line with the Coss case. So it is distinguishable from Bingham. And to try to apply Bingham to these facts would necessitate overruling Coss. And also after trial, when Mr. Frazier became the attorney and he complained about the refusal of the continuance from the June call to the October call, he admitted that the defendant, he had told the defendant, quote, at that point he told him that I could not represent him, and that the defendant, quote, needed to obtain a continuance of the trial date to the next jury call in October. So even Mr. Frazier, once he gets in the case, confirms the facts that were placed before the court by Mr. Harmon before the continuance was denied. So the record does confirm that there was no denial of the right of counsel of choice. With respect to inquiry of the defendant's reasons why he wants new counsel, the record actually shows this, and I think there's a dispute, so it's important to quote this. Mr. Harmon stated, quote, Judge, I think Mr. Frazier told my client that he needs to make a statement about his desire to express to the court that he wants to retain Mr. Frazier as his lawyer, end quote. And that is not disputed. It was obvious, but through the motion to continue, that the defendant did in fact want a different attorney, and Mr. Frazier would be that attorney. It doesn't make any reference to why, and even if it did, the trial court does not have to entertain an untimely motion to continue, regardless of what reasons the defendant has for wanting a new attorney. So that's a situation where the failure to inquire of the defendant personally is not a similar error to what was alleged in Bingham. With respect to the wide error, I recognize that the defendant signs the Supplemental Authority to Wilmington case in February of 2013. However, the standard is plain error, and an error is not plain if the law becomes clarified on appeal. And at the time of trial, which was in June 2012, the governing standard was the appellate court case of Blankenship, and Blankenship reasoned that acceptance of the Rule 431B and these principles implied their understanding. So there was no error at the time of the trial in the course of wide error under the Blankenship case. Well, the law becomes clarified and changed, and the trial court's wide error would have been insufficient to comply with Rule 431B, as construed by the Wilmington case. But then that does not mean, though, that is a plain error, and it also does not mean that counsel is ineffective for failing to object to that wide error, because that also presumes that the Sixth Amendment rights for counsel includes the right to have counsel clairvoyant enough to anticipate changes in the law and anticipate the Wilmington decision, which had not been rendered at the time of trial. So for that reason, even if it were considered a plain error, as clear or obvious, the defendant has not met its burden of showing that his forfeiture should be excused. And particularly, he identifies no evidence of juror bias, and the second prong is out. And as to the first prong of guilt, the closely balanced nature of guilt is his claim. The evidence is overwhelming, and the fact that the jurors had, at some point, expressed some inability to reach a verdict, that was the strong feelings note that came out. By itself, that is not enough to call the case closely balanced, and defendants' arguments on appeal about the closely balanced nature of the case simply refer to the lack of any sort of video corroboration and the claims of impeachment from the omissions from reports, for example, that the police officers had written. So those facts by themselves, where there's no defendant here that testified to set apart a different credible version of events. So there's no real conflict in the evidence. So with respect to the testimony of the officers, it is strongly weighted, at least strongly weighted. The one comment on the booking room video, this case is controlled by the Jackson. The notion that the prosecutors can comment on the defendant's failure to produce evidence, where there's two things. Here, there was equal access to that videotape, and the second thing is that the defendant assails the prosecution's failure to produce that videotape. So here, what happened is the defense argued, where's the tape if it's really egregious? And the prosecutor said, well, if it would have shown the defendant not sleeping, you can be sure, guaranteed, that the defense would have shown it. It's just direct rebuttal and an invited response, and therefore cannot be claimed as error, and in fact was proper comment on the defendant's assailing of the prosecution's failure to produce the video. Also, the Shum case controls with respect to the claims that Officer Thompson had no motive to lie and therefore told the truth. That is not vouching for witness and therefore not improper. And the argument, where's the other side of that story, the record shows referred only to the expired registration charge, which the defense had just admitted that he was guilty of, although in the opening statement had claimed that he wanted the jurors to keep an open mind about all the charges, essentially, so therefore did not tend to cast light on the aggravated DUI charge. And again, the defendant invited the prim response, the response to the jurors' comments, which he agreed not to give prim, so therefore that's an invited error and may not be raised. So I'd entertain any questions. Otherwise, thank you and request to report. Okay, I see none. Thank you, Counsel. Mr. Frazier, any rebuttal, sir? Briefly, Your Honors. First of all, you know, Bingham himself talks about the inquiry that a trial court should make when there has been a request for a continuance. Well, as I remember Bingham, I remember you left with a clear impression that it was entirely possible on the sparse record that was before that court, and because of the failure of the trial court to make inquiries, that the lawyer who was the subject of the request might very well have been ready. He wasn't in court that moment, but might very well have been ready to appear had the inquiry been made. Well, he had been identified. I don't think there was a record as to whether he was or was not. And as I've talked to the judge ever since, I say, why don't you just pick up the phone and find out? Give him a call. He could have said, what are you talking about? Who is this guy? Which would have helped. Or he said, that's right, but for the fact that I'm doing something else, I'd be there right now and I'd ask that to be communicated. But we knew in your case, you weren't ready, willing, able to appear that day or the next day to represent him. Correct. Counsel, you should also be aware, in Bingham, the prosecutor represented to the court that the prosecutor had received a message from Mr. Washington, who was counsel who was going to enter, and said that Mr. Washington was most anxious to proceed in this matter. And so that doesn't sound like someone who's going to ask for a setting on the next trial term. Correct. But anxious to be ready may be anxious to assume the reins of the case or anxious to start that day. I don't know if the record is correct. It's exactly right, which is why he should have called, or he should have made an inquiry. What did you mean by that? What's going on? Here's the language that was used in Bingham concerning the balancing test upon a request for a continuance. The court said the balancing of necessity requires a review of the diligence shown by the defendant and an inquiry into the actual request to see if the request is being used merely as a delaying tactic. Again, that inquiry was not made. In fact, when Mr. Curry tried to say the reason why he wanted new counsel, he was not allowed to do so. The court later said the trial court should have conducted an inquiry into the circumstances and the purpose of the motion before making its ruling, is what the court actually said in Bingham. So that's the type of inquiry I think the court anticipated. The last thing I would say concerning the closely balanced nature of the facts of this case, as you will note from the record, the jury did send a note at one point saying that there were strong opinions both ways concerning the evidence that the judge told them to keep deliberating and they subsequently, quickly I believe, convicted Mr. Curry of these offenses. So for those reasons, again, we would ask that Mr. Curry be granted a new trial. Thank you. Thank you, counsel. We'll take this matter under recess, under advisement rather than being recessed until two weeks.